Affirmed and Opinion filed October 21, 2004









Affirmed and Opinion filed October 21, 2004.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00045-CR

NO. 14-03-00046-CR

____________

 

MICHAEL LESLIE
GATTIS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause Nos. 912,892;
919,453

 



 

O P I N I O N








Appellant Michael Leslie Gattis was found
guilty of the felony offenses of intoxication manslaughter and intoxication
assault, and the jury sentenced him to thirteen years’ and ten years’ confinement,
respectively, in the Texas Department of Criminal Justice, Institutional
Division.  In eleven points of error,
appellant claims (1) his blood was seized in violation of Texas law and the
state and federal constitutions; (2) the trial court erred in denying his
motions for a mistrial and for a new trial based on improper jury argument; (3)
the trial court erred by instructing the jury on the per se theory of
intoxication; (4) the trial court erred in admitting evidence of his blood
alcohol concentration without retrograde extrapolation evidence; (5) the trial
court abused its discretion in denying his motion for new trial after the
State, during the punishment phase of trial, commented on his constitutional
right to remain silent; and (6) the evidence is legally insufficient to convict
him of the charged offenses.  We affirm.

Background

On May 10, 2002, Erin Peck, Mark Watabe,
Julien Jaworski, and Stephanie Hsie attended a party at the home of Erin’s
parents to celebrate the end of their freshman year as architecture students at
Rice University.  After the party, they
had ice cream and decided to rent a video. 
As they were leaving the video store around midnight, their car was
struck from the side by the driver of a silver pick-up truck.  As a result of the accident, Erin Peck, the
driver, was killed.  Stephanie Hsie
suffered a broken leg and severe injuries to her face.  

Appellant, the driver of the silver
pick-up truck, was driving westbound on Bissonnet in excess of the speed
limit.  As he approached the intersection
of Greenbriar at a high rate of speed, the traffic light was red.  Appellant veered into the turning lane to
drive past vehicles that were stopped at the light.  Appellant continued straight in the turning
lane, ran the red light, and struck the car Erin Peck was driving.  Peck’s car, which had the green light, was
traveling southbound on Greenbriar through the intersection. 

Maria Garza and her husband Bernardo were
driving home on Bissonnet the night of the accident.  Maria had earlier noticed the pick-up truck
driving erratically.  The Garzas heard
the collision and stopped to render aid. 
While waiting for the police and ambulance, Mrs. Garza asked appellant,
“What did you think you were doing?” 
Appellant answered, “I was hauling ass.” 









Officer Michael Wick of the Houston Police
Department responded to the accident call. 
Officer Wick asked appellant if he had been drinking, and appellant said
he had.  Officer Wick noticed appellant
had slurred speech, and his breath smelled strongly of alcohol.  Wick determined that appellant had lost the
normal use of his mental and physical faculties as a result of
intoxication.  Wick related this information
to Officer T.D. Houston.  When Houston
arrived on the scene, appellant had been transported to the hospital.  Relying on the information from Wick and the
statements of witnesses, Houston contacted Officer Neal Correia, a DWI task
force officer, and informed him there had been an accident with a fatality and
alcohol was a factor.

Approximately an hour after the accident,
Correia arrived at Ben Taub hospital and was directed to appellant’s room.  Before Correia introduced himself to
appellant, Correia overheard appellant say he had consumed approximately ten
beers and had been speeding.  Correia
noticed appellant’s speech was slurred and his breath smelled of alcohol.  Correia introduced himself to appellant and
requested consent for a blood sample. 
When appellant refused, Correia placed appellant under arrest, read the
statutory warnings to appellant, and informed him that a mandatory draw of his
blood would be taken. Correia instructed the nurse to draw appellant’s blood.
He later delivered the blood to the Houston Police Department crime laboratory.


Pauline Louie, a police chemist, testified
that she retrieved the blood sample and tested it for blood alcohol
concentration.  Louie tested four samples
of appellant’s blood and the samples revealed appellant’s blood contained
between 0.2657 and 0.2681 grams of alcohol per 100 milliliters of blood.  Louie testified that 0.08 grams of alcohol
per 100 milliliters of blood is the legal limit of intoxication.

Motion to
Suppress

In four issues, appellant contends the
warrantless seizure of his blood was in violation of section 724.012 of the
Texas Transportation Code, and because the State did not prove any other
exception to the prohibition against warrantless search and seizure, it
violated the Fourth Amendment to the U.S. Constitution and article I, section 9
of the Texas Constitution.

 

 








Standard of Review

We review a trial court’s ruling on a
motion to suppress under a bifurcated standard of review, giving almost total
deference to the trial court’s findings of historical fact and reviewing de
novo the trial court’s application of the law. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  When a trial court’s decision to admit or
exclude evidence is correct based on any theory of law applicable to the case,
the trial court’s decision will be affirmed. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  The trial judge is the exclusive trier of
fact and judge of the credibility of the witnesses and the weight to be given
their testimony at a suppression hearing. 
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Transportation Code

Appellant contends the blood sample was
illegally seized in violation of section 724.012 of the Texas Transportation
Code.  For the involuntary taking of a blood specimen to be
authorized, section 724.012(b) sets out three specific requirements: (1) there
was a life‑threatening accident; (2) the defendant was arrested for an
intoxication offense under Chapter 49 of the Penal Code; and (3) the arresting
officer reasonably believed the accident occurred as a result of the
offense.  Badgett v. State, 42
S.W.3d 136, 138 (Tex. Crim. App. 2001). 
Appellant contends he was not arrested for an offense under Chapter 49
of the Penal Code and the officers did not have a reasonable belief that the
accident occurred as a result of his intoxication.








Prior to trial, appellant filed a motion
in which he contended evidence of his blood alcohol concentration should be
suppressed.  He filed an affidavit in
support of that motion in which he claims he was never under arrest because at
the time he left the hospital no charges had been filed.  Officers Houston and Correia filed affidavits
in opposition to appellant’s motion.  In
his affidavit, Officer Houston stated he conducted the accident scene
investigation and concluded appellant caused the accident and the death of the
complainant.  Houston stated that Officer
Wick, who arrived prior to Houston, informed him that appellant was intoxicated
due to the introduction of alcohol.  Houston
then called Officer Correia and informed him that appellant was at the hospital
and requested that Correia obtain a sample of appellant’s blood.

At trial, Officer Wick testified that when
he arrived on the scene, several witnesses identified appellant as the driver
of the pick-up truck.  Wick spoke with
appellant for a brief period of time and noticed he had a strong odor of
alcohol coming from his breath, bloodshot eyes, and slurred speech.  Based on his observations, Wick determined
appellant was intoxicated, but stated on cross-examination he did not have
enough information to arrest him.[1]  

Officer Correia stated in his affidavit
that when he contacted appellant at the hospital, appellant was strapped to a
back board and his head was immobilized. 
Correia noticed a moderate odor of alcoholic beverage, slurred speech,
mood swings, and inappropriate behavior. 
From those observations, Correia formed the opinion appellant was
intoxicated.  Correia also overheard
appellant say he had ten beers and was speeding.  Correia then told appellant he was under
arrest and read him the statutory warnings for the mandatory withdrawal of
blood.  Correia stayed with appellant
until another officer arrived.  That
officer took appellant to the accident division of the police department.  Appellant was discharged from the hospital
and allowed to leave. 








Under the Code of Criminal Procedure, a
person is arrested when he has been actually placed under restraint or taken
into custody by an officer.  Tex. Code Crim. Proc. Ann. art. 15.22
(Vernon 1977).  An arrest is complete
when a person’s liberty of movement is successfully restricted or restrained,
whether this is achieved by an officer’s physical force or the suspect’s
submission to the officer’s authority.  Medford
v. State, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000).  An arrest is complete if a reasonable person
in the suspect’s position would have understood the situation to constitute a
restraint on freedom of movement of the degree that the law associates with
formal arrest.  Id.  

Here, when Officer Correia told appellant
he was under arrest, appellant was restrained to a hospital bed with his head
immobilized.  Although the restraint was
imposed by the hospital personnel for the purposes of treating appellant, it
appears he was placed under restraint and his freedom of movement was
successfully restricted or restrained.  See
Bell v. State, 881 S.W.2d 794, 799 (Tex. App.—Houston [14th Dist.] 1994,
pet. ref’d) (“A reasonable person, injured and lying on a hospital stretcher,
hearing from a police officer the words ‘you are under arrest’ and ‘placed
under arrest,’ could conclude that he was not free to leave.”).  The fact that the officers eventually
released appellant from their custody does not affect the conclusion that
appellant was under arrest at the time the officers obtained the blood
specimen.  See Williams v. State,
No. 05-03-00787-CR, 2004 WL 434622 (Tex. App.—Dallas March 10, 2004, no pet.)
(not designated for publication).








When viewed in the light most favorable to
the trial court’s ruling, the evidence shows that appellant was under arrest
for the offense of driving while intoxicated when the sample of blood was taken
from him at the hospital.  The evidence
further shows that the officers had a reasonable belief that the accident
occurred as a result of appellant’s intoxication.  Officer Wick observed appellant at the
accident scene and determined he was intoxicated due to the ingestion of
alcohol.  Officer Houston investigated
the accident and determined that appellant caused the collision that killed the
complainant.  Finally, Officer Correia
observed appellant at the hospital and determined from his observation and
appellant’s statements that appellant was intoxicated.  Where several officers are involved, the sum
of the information known to the cooperating officers at the time of arrest is
to be considered in determining probable cause. 
Garrison v. State, 726 S.W.2d 134, 137 (Tex. Crim. App.
1987).  The sum of the information known
to the cooperating officers lead to a reasonable belief that the accident
occurred as a result of appellant’s intoxication.  Because the requirements of section 724.012
of the Transportation Code were met, Officer Correia was entitled to request a
mandatory draw of appellant’s blood. 
Appellant’s first and second issues are overruled.

Warrantless Seizure

In his third and fourth issues, appellant
contends the warrantless seizure of the blood evidence violated the Fourth
Amendment to the U.S. Constitution and article I, section 9 of the Texas
Constitution.  

The taking of a blood specimen is a search
and seizure under the Fourth Amendment to the U.S. Constitution and article I,
section 9 of the Texas Constitution.  Schmerber
v. California, 384 U.S. 757, 767–68 (1966); Aliff v. State, 627
S.W.2d 166, 170 (Tex. Crim. App. 1982). 
Where the officers have probable cause, exigent circumstances, and a
reasonable method of extraction, the search and seizure is not unreasonable and
does not violate the federal or state constitution.  Aliff, 625 S.W.2d at 170.  Probable cause to arrest exists when the
arresting officer has knowledge based on reasonably trustworthy information
that would warrant a reasonable and prudent person in believing that a particular
person has committed or is committing a crime. 
Guzman, 955 S.W.2d at 90.

Here, the officers had probable cause to
arrest appellant for driving while intoxicated, intoxication manslaughter, and
intoxication assault.  Withdrawal of
blood by a registered nurse at a hospital is a reasonable method of
extraction.  See Tex. Transp. Code Ann. § 724.017
(Vernon 1999) (providing a list of professions whose members are permitted to
draw blood).  Further, the fact that
alcohol in the blood dissipates quickly constitutes exigent circumstances.  See Schmerber, 384 U.S. at 770–71; Aliff,
627 S.W.2d at 170; Weaver v. State, 721 S.W.2d 495, 497 (Tex.
App.—Houston [1st Dist.] 1986, pet. ref’d). 
Based on the record before the trial court, the State established
Correia possessed probable cause to arrest appellant at the time the blood was
drawn.  Therefore, the taking of the
blood specimen did not violate either the state or federal constitutions.  Appellant’s third and fourth issues are
overruled.

 








Jury Argument

In his fifth and sixth issues, appellant
contends the trial court erred in denying appellant’s motion for mistrial and
in denying his motion for new trial based on the prosecutor’s improper jury
argument during the guilt-innocence phase of trial.  At trial, the State offered the expert
testimony of Pauline Louie to show evidence of appellant’s blood alcohol
concentration.  Louie also testified as
follows:

Q. 
– approximately how much alcohol is – just on average – in a human does
a – is eliminated?

 

[Defendant’s objection overruled]

 

A. 
Alcohol is eliminated in the body by the liver at approximate rate of
0.02 alcohol concentrations per alcohol [sic]. 

 

In closing, the prosecutor argued:

And if you think about it, a .26,
that explains everything that you’ve heard about in the loss of normal use
category.  It explains why somebody would
drive that crazy, why somebody would be that oblivious that his best comment on
killing a little girl was I was hauling ass.

 

It all makes sense.  That’s what I’m telling you about when I’m
saying the evidence all comes together. 
It makes perfect sense.  And
Pauline Louie, she said that we eliminated approximately .022 an hour.  And this was done an hour after the
accident.  So, do the math.

 

The trial court sustained appellant’s objection to the
prosecutor’s argument.  The court then
instructed the jury to disregard the prosecutor’s comment and denied
appellant’s request for a mistrial.








The approved general areas of argument are
as follows: (1) summation of the evidence, (2) reasonable deduction from the
evidence, (3) answer to argument of opposing counsel, and (4) plea for law
enforcement.  Jackson v. State, 17
S.W.3d 664, 673 (Tex. Crim. App. 2000). Even when an argument exceeds the
permissible bounds of these approved areas, such will not constitute reversible
error unless, in light of the record as a whole, the argument is extreme or
manifestly improper, violative of a mandatory statute, or injects new facts
harmful to the accused into the trial proceeding.  Todd v. State, 598 S.W.2d 286, 296–97
(Tex. Crim. App. 1980).  The remarks must
have been a willful and calculated effort on the part of the State to deprive
appellant of a fair and impartial trial. 
Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).  In most instances, an instruction to
disregard the remarks will cure the error. 
Wilkerson v. State, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994).

Appellant contends that Louie did not
testify that appellant eliminated alcohol at a rate of 0.022 per hour;
therefore, the State improperly injected new facts harmful to the accused.  It is improper to invite the jury to
speculate on the existence of evidence not presented.  By encouraging the jury to “do the math,” the
prosecutor’s comment could be construed as an invitation to speculate.  The prosecutor’s comment, however, was
quickly followed by an instruction to disregard from the trial court, which we
presume the jury obeyed.  See Colburn
v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).  Only offensive or flagrant error warrants
reversal when there has been an instruction to disregard.  See Wilkerson, 881 S.W.2d at 327.  The foregoing argument is not so offensive or
flagrant that its effect could not be overcome by the instruction to disregard
given by the trial court.  See, e.g.,
Wesbrook v. State, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000) (holding that
where the jury has been instructed to disregard it, even a prosecutor’s comment
inviting the jury to speculate on the existence of evidence not presented does
not warrant reversal unless it is offensive or flagrant).  Appellant’s fifth and sixth issues are
overruled.

Admission of
Blood Test Results








In his eighth and ninth issues, appellant
contends the trial court erred in admitting evidence of appellant’s blood
alcohol concentration in violation of Texas Rules of Evidence 402 and 403
because the State failed to introduce retrograde extrapolation evidence.  Retrograde extrapolation is the “computation
back in time of the blood‑alcohol level—that is, the estimation of the
level [of blood alcohol concentration] at the time of driving based on a test
result from some later time.”  Mata v.
State, 46 S.W.3d 902, 908–09 (Tex. Crim. App. 2001).  At the time the State introduced evidence of
appellant’s blood alcohol concentration, appellant objected that without
retrograde extrapolation evidence, the blood alcohol concentration at the time
the blood was drawn was not relevant. 
Appellant further objected that the prejudicial effect of the evidence
outweighed its probative value. 
Appellant contends evidence of appellant’s blood alcohol concentration
approximately sixty to seventy minutes after the accident was not relevant to
show appellant was intoxicated at the time he was driving because his blood
alcohol concentration level could have been more or less at the time of the
test than when he drove.

Rule 402

Relevant evidence means evidence having
any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.  Tex. R. Evid. 401.  “Evidence need not by itself prove or
disprove a particular fact to be relevant; it is sufficient if the evidence
provides a small nudge toward proving or disproving some fact of
consequence.”  Stewart v. State,
129 S.W.3d 93, 96 (Tex. Crim. App. 2004) (citing McCormick Handbook of the Law of Evidence § 185, at 436 (2d
ed. 1972)).  Intoxication is defined in
the penal code as “having an alcohol concentration of 0.08 or more” or “not
having the normal use of mental or physical faculties by reason of the
introduction of alcohol into the body.”  Tex. Pen. Code Ann. § 49.01(2) (Vernon
2003).








The issue is whether appellant was
intoxicated at the time of the accident. 
Appellant’s blood test results tended to make it more probable that he
was intoxicated at the time he drove under either definition of intoxication
because the test results provided evidence that he had consumed alcohol.  See Stewart, 129 S.W.3d at 96.  Further, there is no evidence appellant
consumed alcohol after driving.  The
blood test results, along with the witnesses’ and officers’ testimony, were
probative evidence of appellant’s intoxication. 
See id.

Appellant further contends the trial court
encouraged the jury to decide the case based on facts not in evidence.  Appellant contends that by admitting the
blood alcohol concentration without retrograde extrapolation, the court
encouraged the jury to engage in its own “crude” retrograde extrapolation.  Admission of the blood test results did not
require the jury to engage in its own retrograde extrapolation.  The jury did not need to establish appellant’s
exact blood alcohol at the time he drove. 
The jury only needed to believe beyond a reasonable doubt that either
his blood alcohol concentration was 0.08 or more, or that he failed to have the
normal use of his mental or physical faculties by reason of the introduction of
alcohol.  The blood test results were
properly admitted evidence to consider with the other evidence of intoxication
to determine if appellant was intoxicated at the time of the accident.  See id. at 97.  The trial court properly overruled
appellant’s objection based on Texas Rule of Evidence 402.

Rule 403








Appellant further objected under Rule of
Evidence 403 that the prejudicial effect of the blood test results outweighed
their probative value.  Although
admissible, evidence may be excluded if its relevance is outweighed by a danger
that it will unfairly prejudice, confuse, or mislead the jury, if its inclusion
will result in undue delay, or if it is needlessly cumulative. Tex. R. Evid. 403.  Because Rule 403 favors admissibility of
relevant evidence, the presumption is that relevant evidence will be more
probative than prejudicial.  Montgomery
v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990).  The burden is on the opponent of the
proffered evidence to demonstrate the negative attributes of the evidence and
to show how these negative attributes substantially outweigh the probative
value of the evidence.  Goldberg v.
State, 95 S.W.3d 345, 367 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d),
cert. denied, 124 S. Ct. 1436 (2004). 
Further, in reviewing the trial court’s decision to admit certain
evidence, we may reverse only for an abuse of discretion, that is, only when
the trial court’s decision is outside the zone of reasonable disagreement.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000).

In determining whether the prejudice of
admitting evidence outweighs its probative value, we consider the following:
(1) how compellingly the evidence makes a fact of consequence more or less
probable; (2) the potential the evidence has to impress the jury in an
irrational, but indelible way; (3) the time the proponent will need to develop
the evidence, during which the jury will be distracted from consideration of
the indicted offense; and (4) the proponent’s need for the evidence to prove a
fact of consequence.  Mozon v. State,
991 S.W.2d 841, 847 (Tex. Crim. App. 1999). 

As discussed above, the blood alcohol test
results, which revealed a blood alcohol concentration of more than 0.26, are
probative evidence of whether appellant was intoxicated at the time of the
accident.  As to whether the jury would
be impressed in an irrational way, this court has held that testimony about the
limits of the blood alcohol concentration test for determination of alcohol
level at the time of driving, in addition to expert testimony regarding
possible erroneous test results, eliminated the potential for undue
persuasiveness.  Verbois v. State,
909 S.W.2d 140, 142 (Tex. App.—Houston [14th Dist.] 1995, pet. ref’d).  Pauline Louie, the State’s expert, testified
she did not have enough information to determine exactly what appellant’s blood
alcohol level was at the time of the accident, but that it was more than 0.26
approximately sixty to seventy minutes after the accident.  Louie’s testimony, coupled with evidence that
the test results provided accurate evidence that appellant had ingested alcohol
prior to the accident, removed the potential that the jury would be
irrationally impressed by the blood test results.








The amount of time needed to develop the
evidence was minimal; therefore, the jury was not distracted from the indicted
offense.  Finally, evidence of the blood
test results was necessary to show that appellant was intoxicated at the time
of the offense.  The State presented some
evidence, other than the blood test results, that appellant was intoxicated due
to the introduction of alcohol into his body, for example, appellant’s
admission he had ten beers and beer bottles found in appellant’s truck.  After reviewing the appropriate factors, we
conclude there is not a clear disparity between the degree of prejudice of
blood test results taken sixty to seventy minutes after the accident and their
probative value.  Appellant’s eighth and
ninth issues are overruled.

Legal Sufficiency
of the Evidence

In his eleventh issue, appellant contends
the evidence is legally insufficient to prove beyond a reasonable doubt that at
the time appellant operated a motor vehicle he had lost the normal use of his
physical or mental faculties, or he had an alcohol concentration of at least
0.08.  

Standard of Review

In evaluating a legal sufficiency claim
attacking a jury’s finding of guilt, we view the evidence in the light most
favorable to the verdict.  Wesbrook,
29 S.W.3d at 111.  We do not ask whether
we believe the evidence at trial established guilt beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318–19 (1979).  Rather, we
determine only whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Cardenas v. State, 30 S.W.3d 384, 389
(Tex. Crim. App. 2000).  

Appellant was convicted of intoxication
manslaughter and intoxication assault. 
Intoxication manslaughter occurs when a defendant operates a motor
vehicle in a public place while intoxicated and, by reason of that intoxication,
causes the death of another.  Tex. Pen. Code Ann. § 49.08(a) (Vernon
2003).  Intoxication assault occurs when
a defendant operates a motor vehicle in a public place while intoxicated and,
by reason of that intoxication, causes serious bodily injury to another.  Id. § 49.07(a).  The jury was instructed on both the “per se”
and “loss of faculties” definitions of intoxication.  See id. § 49.01(2) (defining
intoxication as not having the normal use of mental or physical faculties or
having an alcohol concentration of 0.08 or more).

 








Per se Intoxication

Appellant first contends the State
presented no evidence that he had an alcohol concentration of 0.08 or more at
the time of the accident.  Police Chemist
Pauline Louie testified that appellant’s blood alcohol concentration
approximately sixty to seventy minutes after the accident was between 0.2657
and 0.2681 grams of alcohol per 100 milliliters of blood.  There was no evidence that appellant had any
alcohol to drink between the time of the accident and the time his blood was
withdrawn for testing.  The jury did not
have to establish appellant’s exact blood alcohol level at the time of the
accident; it only needed to find that appellant’s blood alcohol level was 0.08
or higher.  With a blood alcohol
concentration of more than 0.26 sixty to seventy minutes after the accident, a
reasonable jury could have concluded beyond a reasonable doubt that appellant’s
blood alcohol concentration sixty to seventy minutes before the test was 0.08
or more.  

Loss of Physical or Mental Faculties

Appellant further contends the evidence is
insufficient to show loss of physical or mental faculties.  The first police officer to arrive on the
scene, Officer Wick, testified that immediately after the accident appellant
appeared dazed and had a strong odor of alcohol on his breath, bloodshot eyes,
and slurred speech.  Wick formed the
opinion that appellant was possibly intoxicated from the ingestion of
alcohol.  Witnesses to the accident
testified that appellant was driving erratically and passed several vehicles
stopped at a red light at a high rate of speed. 
Appellant later said he had consumed ten beers, and cold beer bottles
were found in appellant’s truck after the accident.  Approximately one hour after the accident,
Officer Correia met appellant at the hospital and smelled alcohol on his
breath.  Officer Correia also noticed
appellant’s speech was slurred.  A
rational jury could have found beyond a reasonable doubt that appellant lost
the use of his physical or mental faculties by reason of the introduction of
alcohol into his body.  Appellant’s
eleventh issue is overruled.

 

 








Jury Charge

In his seventh issue, appellant contends
the trial court erred in instructing the jury on the “per se” theory of
intoxication because the State failed to present sufficient evidence to support
the instruction.  Appellant contends that
because the State failed to present evidence of appellant’s blood alcohol level
at the time of the accident, the jury should not be permitted to consider the
per se theory of intoxication.[2]  The definitions of intoxication set forth in
Texas Penal Code section 49.01 provide alternative means by which the State may
prove intoxication.  Bagheri v. State,
119 S.W.3d 755, 762 (Tex. Crim. App. 2003). 
The conduct proscribed is the act of driving while in a state of
intoxication.  That does not change
whether the State uses the per se definition or the impairment definition to
prove the offense.  Id.  The trial court errs when it charges a jury
on a theory of conviction that is not supported by the evidence.  Sanders v. State, 814 S.W.2d 784, 787
(Tex. App.—Houston [1st Dist.] 1991, no pet.). 
At trial, appellant objected to the inclusion of the per se definition
in the court’s charge because insufficient evidence supported its
submission.  An appellant who objects to
the omission of an instruction and preserves the error is entitled to a
reversal if the appellant can show “some harm” caused by the omission.  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984).








Here, the trial court properly admitted
evidence of appellant’s blood alcohol concentration.  The evidence was relevant to show appellant
had been drinking alcohol shortly before the accident.  The jury was not required to determine appellant’s
exact blood alcohol concentration at the time of the accident.  Evidence of a blood alcohol concentration in
excess of 0.26 coupled with no evidence that appellant drank alcohol between
the time of the accident and the time of the blood draw is sufficient to
support submission of the per se definition of intoxication.  Appellant’s seventh issue is overruled.

Punishment Phase

In his tenth issue, appellant contends the
trial court abused its discretion in denying his motion for new trial
complaining that the State improperly commented on appellant’s constitutional
right to remain silent.  Specifically,
appellant complains of questions the prosecutor asked Stephanie Hsie and Dennis
Peck about whether appellant had contacted them to express remorse.  Appellant further complains that the
prosecutor improperly commented on appellant’s lack of remorse in his closing
argument at the punishment phase of trial. 
The record reflects that appellant failed to object either to the
prosecutor’s questions or to his closing argument.  To preserve a complaint for appellate review,
a party must present a timely, specific objection at trial.  Dixon v. State, 2 S.W.3d 263, 265
(Tex. Crim. App. 1998).  By waiting until
after trial and raising his complaint for the first time in a motion for new
trial, appellant did not make a timely objection.  Id. (stating that the objection must
be made at the earliest opportunity). 
Further, by failing to object to the prosecutor’s argument, appellant
forfeited his right to complain on appeal. 
Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Appellant’s tenth issue is overruled.

The judgment of the trial court is
affirmed.

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Opinion filed October 21, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish — Tex. R. App. P.
47.2(b).











[1]  In his brief,
appellant contends Wick’s testimony directly contradicted the assertions in
Houston’s affidavit.  Specifically,
appellant contends Officer Houston asserted in his affidavit that Officer Wick
had arrested appellant.  To the contrary,
in his affidavit, Houston stated Wick “noted that the defendant was intoxicated
due to the introduction of alcohol into his system.”  At trial, Wick testified he did not arrest
appellant at the scene because appellant was taken to the hospital before he
could conduct further investigation.





[2]  In support of
his issue, appellant cites Bagheri v. State, 87 S.W.3d 657 (Tex.
App.—San Antonio 2002), aff’d, 119 S.W.3d 755 (Tex. Crim. App. 2003),
for the proposition that without retrograde extrapolation evidence, it was
error to charge the jury on the per se theory of intoxication.  In that case, however, the State admitted
error in its introduction of retrograde extrapolation without relevant facts to
support the extrapolation.  Id. at
659.  The court found because the trial
court instructed the jury on both the per se and impairment definitions of
intoxication, the erroneous admission of the evidence was harmful.  The court of appeals did not address whether
the trial court erred in submitting the per se definition of intoxication.  Id.