In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-291 CR


____________________



WINDY LYNETTE CHRIST, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court 


Jefferson County, Texas


Trial Cause No. 89019






MEMORANDUM OPINION


 A jury convicted Windy Lynette Christ of Intoxication Manslaughter. See Tex. Pen.
Code Ann. § 49.08 (Vernon 2003). The jury assessed punishment at confinement in the
Texas Department of Criminal Justice - Correctional Institutions Division for a term of
twelve years, and a fine of $10,000. Christ presents two issues for our consideration:

 1. The Court erred when it allowed evidence of Appellant's alcohol content
in a blood sample taken more than two hours after the incident without expert
testimony of retrograde extrapolation relating Appellant's blood alcohol test
results back to the time of the incident.


 2. The Court erred in allowing irrelevant and prejudicial evidence of a blood
test taken more than two hours later to be admitted before the jury.


Testimony indicated that while walking along the shoulder of Highway 365 in Port Arthur,
Texas, the victim, Paul Allen, Jr., was struck by a vehicle driven by Christ. Allen died at the
scene of the accident. Christ proceeded to her residence and upon arrival awakened her
boyfriend, Richie Frye, to tell him she had struck "a pole" with her vehicle. Returning to the
area where Christ damaged her vehicle, Frye and Christ observed a police officer re-routing
traffic and learned from the officer that an accident involving a fatality had occurred. Frye
and Christ returned to their residence and immediately telephoned Christ's attorney. The
attorney instructed Christ to report her involvement to the authorities immediately, which she
did. 

 The indictment alleged Christ was intoxicated under both definitions of that term, i.e.,
by having lost "the normal use of . . . mental and physical faculties" from having ingested
alcohol, and by having an alcohol concentration of 0.08 or more at the time of the offense. 
See Tex. Pen. Code Ann. § 49.01(2) (Vernon 2003). Christ summarized the argument of
her appellate issues in the following manner: 

 The court erred in allowing evidence of blood-alcohol test results before
the jury. The test was taken more than two hours after the incident. The
State's expert testified she was not qualified to conduct or explain retrograde
extrapolation to the jury. 

 

 Absent explanatory testimony of this process, the evidence was
irrelevant and prejudicial. The jury was given free reign to interpret the
evidence in a manner that only served to deny Appellant a fair and impartial
trial.


 Christ complains that the alcohol concentration test results were not admissible. She
appears to be contending that retrograde extrapolation evidence was a necessary prerequisite
to the admissibility of her blood alcohol concentration because of the lengthy passage of time
from when the accident occurred to the time when Christ's blood was extracted at the
hospital. Moreover, Christ argues that because the State presented no scientific basis for any
of its absorption/elimination testimony, any expert testimony on the subject could not provide
the foundation for making her blood test results relevant on the issue of whether she was
intoxicated at the time of the accident. Christ relies on Mata v. State, 46 S.W.3d 902 (Tex.
Crim. App. 2001), as authority for this proposition. 

 In State v. Mechler, 153 S.W.3d 435, 438 (Tex. Crim. App. 2005), the Court noted
that its opinion in Mata "addressed the necessary factors needed to establish the reliability
of expert testimony on retrograde extrapolation." In Mata, the Court explicitly narrowed the
legal issue before it as follows:

 To clarify, we are not addressing whether retrograde extrapolation is
necessary in order for the State to prove a defendant guilty in a DWI case. Nor
do we address whether test results showing a defendant's BAC [blood alcohol
concentration] at some time after the alleged offense are admissible at trial in
the absence of retrograde extrapolation. Our only concern today is whether
[the State's breath test technical supervisor witness] reliably applied the
science of retrograde extrapolation in Mata's trial.


Mata, 46 S.W.3d at 910 (footnotes omitted). Therefore, Christ's reliance on Mata with
regard to admissibility of her blood alcohol concentration is misplaced. See also Mechler,
153 S.W.3d at 438. In Stewart v. State, 129 S.W.3d 93, 96-97 (Tex. Crim. App. 2004), the
Court held that intoxilyzer results are probative without retrograde extrapolation testimony. 
See also Mechler, 153 S.W.3d at 440 (citing Stewart, 129 S.W.3d at 97). Nevertheless, the
Court in Stewart rejected the State's contention that certain provisions in the Transportation
Code (1) create absolute admissibility of breath test results. Stewart, 129 S.W.3d at 98. 
Reaffirming the position it took in Bagheri v. State, 119 S.W.3d 755, 760 (Tex. Crim. App.
2003), the Stewart Court stated that the admissibility of breath test results in alcohol-related
prosecutions may not require the State to establish the scientific basis for such a test, but the
State is still required to show the tests results are relevant to the particular prosecution "'in
the sense that [the test results] accurately reflect the subject's alcohol concentration at the
time of the offense.'" Stewart, 129 S.W.3d at 98 (quoting Bagheri, 119 S.W.3d at 760). 

 "Relevant evidence" is evidence having any tendency to make the existence of any
fact of consequence to the determination of the action more probable or less probable than
it would be without the evidence. Tex. R. Evid. 401. "[E]vidence need not by itself prove
or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small
nudge toward proving or disproving some fact of consequence." Montgomery v. State, 810
S.W.2d 372, 376 (Tex. Crim. App. 1990). "In determining whether a trial court erred in
admitting evidence, the standard for review is abuse of discretion. A trial court abuses its
discretion when its decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree." McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim.
App. 2005) (footnotes omitted). 

 In the instant case, the State notes that Christ's blood was taken approximately two
and one-half hours after the time of the offense. Placing admissibility of blood alcohol
concentration evidence in its proper context, the Court in Stewart discussed the issue as
follows:

 Here, the jury had to decide whether Stewart was intoxicated at the time she
drove. This meant either the jury could find that Stewart was intoxicated
under the per se definition - - that her blood alcohol concentration was 0.10 or
more - - or under the impairment theory - - that she did not have the normal
use of mental or physical faculties by reason of the introduction of alcohol into
her body. The breath test results were pieces in the evidentiary puzzle for the
jury to consider in determining whether Stewart was intoxicated at the time she
drove. The jury had other evidence to decide that issue, such as the arresting
officer's testimony about Stewart's driving patterns before he pulled her over,
the results of Stewart's field sobriety tests, Stewart's admission to the officer
that she had a couple of beers at the concert, Stewart's statement that she
"couldn't do [the field sobriety tests] sober," the officer's videotape recording
these events, and the fact that the breath tests were conducted an hour and
twenty minutes after Stewart's traffic stop.


 The admission of the breath test results did not necessarily encourage
the jury to engage in its own crude retrograde extrapolation because the jury
did not need to establish Stewart's exact blood alcohol concentration at the
time that she drove. The jury only needed to believe beyond a reasonable
doubt that either her blood alcohol concentration was 0.10 or more, or that she
failed to have the normal use of her mental or physical faculties by reason of
introduction of alcohol into her body, at the time she drove. The breath test
results were properly admitted evidence to consider with all of the other
evidence of intoxication to determine if Stewart was intoxicated at the time she
drove. 


Stewart, 129 S.W.3d at 97 (footnote omitted). For an item of evidence to be relevant, i.e.,
to alter the probabilities of the existence of a consequential fact, it must logically increase
one's knowledge and enhance the likelihood of ascertaining the truth about the fact. Kirksey
v. State, 132 S.W.3d 49, 53 (Tex. App.--Beaumont 2004, no pet.); Sorensen v. State, 856
S.W.2d 792, 794 (Tex. App.--Beaumont 1993, no pet.). 

 The consequential fact in the instant case was whether or not Christ was intoxicated
at the time of the accident. The jury heard testimony from Lori Bates Wilson, the former
director of the Jefferson County Regional Crime Laboratory, and from Dr. Tommy Brown,
the forensic pathologist, as to the general theory of human alcohol absorption and elimination
rates. (2) Over objection, Wilson also testified that the results of the testing on Christ's blood-sample, drawn some two and one-half hours after the accident, indicated a blood alcohol
content of 0.18 grams per 100 milliliters of whole blood. Wilson further indicated that Texas
law defines intoxication as having a blood alcohol concentration of 0.08 grams per 100
milliliters of whole blood or greater. From the arresting officer, Keith May, the jury also
heard that Christ exhibited observable signs of intoxication during field sobriety testing
conducted at the hospital following the drawing of Christ's blood. May also testified that
when he first encountered Christ at her residence he noticed her eyes were "glassy," her
speech was "slurred," and that Christ had a strong odor of alcohol on her breath and appeared
to be swaying. The State also introduced into evidence a voluntary written statement Christ
provided to the authorities following her arrest. In her statement, Christ admits to having
ingested two glasses of wine at her residence prior to meeting a friend at a local lounge where
Christ drank "a couple of mixed drinks, Gin and seven-up." Christ noted that at one point
she and another companion left the lounge and drove to a liquor store where Christ purchased
a pint of Gin. Christ made "a couple of drinks" with the bottle of Gin but did not take the
bottle with her when she left the lounge. 

 As in Stewart, the jury in the instant case was presented with evidence other than
alcohol concentration from which to decide if Christ was intoxicated at the time of the
accident. See Stewart, 129 S.W.3d at 97. Christ's alcohol concentration was only one piece
in the "evidentiary puzzle" for the jury's consideration and, as such, was relevant to the issue
of intoxication. See Tex. R. Evid. 401, 402. No abuse of discretion by the trial court is
shown. Issue one is overruled.

 Christ's second issue essentially argues that, apart from its relevance, evidence of
Christ's blood alcohol concentration was unfairly prejudicial in violation of Tex. R. Evid.
403 because of the absence of retrograde extrapolation evidence. Rule 403 provides that
otherwise relevant evidence may still be excluded if its probative value is "substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury
. . . ." Rule 403 presumes the "admissibility of all relevant evidence and authorizes a trial
judge to exclude [the] evidence only when there is a 'clear disparity between the degree of
prejudice of the offered evidence and its probative value.'" Mozon v. State, 991 S.W.2d 841,
847 (Tex. Crim. App. 1999). 

 A proper Rule 403 analysis includes, but is not limited to, four factors: (1) how
compellingly the evidence makes a fact of consequence more or less probable; (2) the
potential to impress the jury in some irrational yet indelible way; (3) the time needed by the
proponent to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; and (4) the proponent's need for the evidence to prove
a fact of consequence; i.e., does the proponent have other probative evidence available to him
to help establish this fact, and is this fact related to an issue in dispute. Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003); Mozon, 991 S.W.2d at 847; Adams v. State, 156
S.W.3d 152, 159 (Tex. App.--Beaumont 2005, no pet.). Unlike extraneous offense/bad act
evidence, a defendant's blood alcohol concentration in a prosecution for most alcohol-related
offenses has significant probative value as the gravamen of the offense is the intoxication
determination. Christ argues that the test's probative value was diminished to insignificance
because of the two and one-half hour window between the time of the accident and the time
her blood was drawn at the hospital. However, the jury was made aware of the timing issue
with regard to Christ's blood test. Additionally, Christ's alcohol concentration of 0.18 was
over twice the amount determined by the legislature for a person to be intoxicated per se in
Texas. See Tex. Pen. Code Ann. § 49.01(2)(B) (Vernon 2003). As noted above, the instant
record contains additional evidence of Christ's state of intoxication from the arresting
officer's observations which began approximately one hour and seventeen minutes after the
accident. We find that the first factor weighs in favor of admissibility of Christ's alcohol
concentration. See Adams, 156 S.W.3d at 159. 

 Having found under the facts and circumstances of this case that the time at which
Christ's blood was drawn had little effect on its relevance or its probative nature, the second
Rule 403 factor becomes a non-factor. Again, unlike extraneous offense/bad act evidence,
the alcohol concentration evidence was introduced as substantive evidence of one element
of the charged offense. It is, therefore, unlikely to affect the jury irrationally under the
particular facts and circumstances of the instant case. See Manning, 114 S.W.3d at 926-28. 
To find otherwise would be similar to finding in a murder prosecution that the forensic
pathologist's cause-of-death testimony, traditionally considered relevant and probative as
going to the corpus delicti of the offense, (3) is inadmissible because it could have an irrational,
but nevertheless indelible effect on the jury. In the instant case, factor two weighs strongly
in favor of admissibility. 

 The third factor regarding the time needed by the State to develop the alcohol
concentration evidence is "inconsequential" because, as Christ's alcohol concentration was
proof of the charged offense, "the jury would not be distracted from the charged offense." 
 Adams, 156 S.W.3d at 160. This factor also weighs heavily in favor of admissibility. 

 Finally, the State's "need" for the alcohol concentration evidence is difficult to assess
as it did have other evidence indicating Christ's intoxication, but that evidence was not
overwhelming. Recall that the arresting officer subjected Christ to various field sobriety
tests. However, the tests were not visually recorded as the officer preferred to have Christ
perform the tests inside the hospital following the drawing of her blood, rather than outside
in the hospital parking area where the officer's patrol unit and video taping equipment were
located. Additionally, the State elected not to introduce retrograde extrapolation testimony. 
Under these circumstances, the fourth factor weighs in favor of admissibility.

 Balancing all the Rule 403 factors, we find there is not a clear disparity between the
degree of prejudice of Christ's alcohol concentration results and its probative value. There
was no abuse of discretion by the trial court in admitting Christ's blood alcohol concentration
under Rule 403. Issue two is overruled. The judgment of the trial court is affirmed. 

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted May 15, 2006

Opinion Delivered July 26, 2006

Do not publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. See Tex. Transp. Code Ann. § 724.064 (Vernon 1999).
2. Christ secured running objections at trial to any absorption/elimination testimony from
Ms. Wilson based upon her lack of expert qualifications. See Tex. R. Evid. 702. However,
Christ does not complain of this testimony on appeal.
3. See Salazar v. State, 86 S.W.3d 640, 644-45 (Tex. Crim. App. 2002) (brief history of
corpus delicti rule and evidentiary requirements).